# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION


**WILLIAM PAUL DELONG,**

     **Plaintiff,**

|  |  |
|---|---|
|  | **Civil Action 2:18-cv-368** |
|  | **Judge James L. Graham** |
| **v.** | **Magistrate Judge Chelsey M. Vascura** |

**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**


## REPORT AND RECOMMENDATION

Plaintiff, William Paul DeLong ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits.   This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Response in Opposition (ECF No. 13), and the administrative record (ECF No. 7).   For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.       BACKGROUND

Plaintiff protectively filed his application for a period of disability and disability insurance benefits on August 26, 2014.   In his application, Plaintiff alleged a disability onset of August 18, 2014.   Plaintiff's applications were denied initially on December 23, 2014, and upon reconsideration on March 23, 2015.   Plaintiff sought a hearing before an administrative law

judge. Administrative Law Judge Nikki Hall (the "ALJ") held a video hearing on February 7, 2017, at which Plaintiff, represented by counsel, appeared and testified. Vocational Expert Larry Ostrowski, Ph.D. (the "VE"), also appeared and testified at the hearing. On March 23, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On February 16, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In his Statement of Errors, Plaintiff advances two contentions of error. First, Plaintiff asserts that the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician, Dr. Bangera, and, as a result, improperly discounted his opinion. (Pl.'s Statement of Errors 5, ECF No. 8.) Plaintiff next asserts that the ALJ improperly evaluated Plaintiff's credibility under SSR 16-3P. (*Id.* at 9.) Within this contention of error, Plaintiff asserts that the ALJ's summary of Plaintiff's testimony and the evidence "is inaccurate and merely represents selective evidence in support of the ALJ's opinion and is not a true representation of the complete record." (*Id.* at 10.)

## II.     RELEVANT MEDICAL RECORDS

### A.     Treating Physician Divakor S. Bangera, M.D.

Divakor S. Bangera, M.D., is Plaintiff's family doctor. (R. at 249.) On May 16, 2014, Dr. Bangera completed a "Restrictions Form" for Liberty Mutual Insurance, in which he opined that Plaintiff was capable of performing medium work on a full-time basis. (R. at 283.)

On April 13, 2015, Dr. Bangera completed a residual functional capacity form. (R. at 409-14.) Dr. Bangera opined that Plaintiff's impairments prevent him from standing for six to

eight hours and sitting upright for six to eight hours, and sometimes require him to lie down during the day. (R. at 410-11.) Dr. Bangera also opined that Plaintiff can sit for a half-hour and then get up and walk; walk a quarter mile without stopping; rarely reach up above his shoulders or down towards the floor; frequently reach down to waist level; carefully handle objects; handle with fingers; lift and carry less than 5 pounds during an eight-hour period; lift and carry less than 5 pounds regularly/daily; and rarely bend. (*Id.* at 410-12.) He further opined that Plaintiff cannot squat, work, or resume work at his previous employment. (*Id.* at 412-13.)

## B. Treating Physician Derek Andreini, M.D.

Derek Andreini, M.D., treated Plaintiff for his degenerative joint disease in his left knee. (R. at 403.) On September 11, 2014, and October 29, 2014, Dr. Andreini restricted Plaintiff to no kneeling or squatting. (R. at 403, 405.) On November 18, 2014, Plaintiff received a Synvisc One injection in his left knee. (R. at 406-08, 456-57.) On January 19, 2015, Plaintiff reported that he received 75% relief in his knee from the Synvisc One injection and that he is walking much better. (R. at 407-08, 457-58.)

In November 2015, Plaintiff returned to Dr. Andreini's office, reporting increased knee discomfort and requesting a repeat Synvisc One injection. (R. at 459.) Dr. Andreini stated that Plaintiff's "[a]ctivity restrictions include no kneeling, no squatting." (*Id.*) Dr. Andreini also indicated that Plaintiff's knee "responds well to conservative management including Mobic and Synvisc." (*Id.*)

## C. Consultative Examiner Khalid Darr, M.D.

On December 11, 2014, Dr. Khalid Darr conducted a consultative examination of

Plaintiff.   (R. at 388-92.)   On examination, Dr. Darr observed as follows:

> The claimant ambulates with a normal gait, which is not unsteady, lurching or
> unpredictable.   [Claimant] noticed that after walking for 150 feet, he would get
> short of breath.   The claimant does not require the use of a handheld assistive
> device.   The claimant appears stable at station and comfortable in the supine and
> sitting positions . . . .

(R. at 389.)   Dr. Darr further noted that "[e]xamination of the legs reveals no tenderness,

redness, warmth, swelling, fluid, laxity or crepitus of the knees, ankles or feet.   There is no calf

tenderness, redness, warmth, cord sign or Homans sign."   (R. at 391.)   He summarized his

findings as follows:

> . . . . The claimant's upper extremity functions for reaching, handling, fine and gross
> movements were intact.   The claimant does not need any ambulatory aid.   The
> claimant is able to push and pull objects and also can manipulate objects.   The
> claimant can operate hand and foot control devices.   The claimant is able to drive
> a motor vehicle and travel without any difficulty.   The claimant is able to climb
> stairs, but with slight difficulty.

> Based upon this clinical evaluation, the claimant is able to lift and carry between
> 25 to 30 pounds frequently and over 30 pounds occasionally.   The claimant's
> activities of daily living and instrumental activities of daily living seem to be intact.

(R. at 391-92.)

Dr. Darr also completed a manual muscle testing form, in which he noted that Plaintiff

had normal motor function and range of motion (R. at 393-96), and that he underwent a

pulmonary function study, which was normal (*id*. at 397-402).

**D.      State-Agency Consultants**

Dr. Maureen Gallagher, D.O., M.P.H, reviewed the record and opined that Plaintiff was

capable of occasionally lifting and/or carrying 50 pounds; frequently lifting and/or carrying 25

pounds; standing and/or walking for a total of about 6 hours in an 8-hour workday; sitting for a

total of about 6 hours in an 8-hour workday; frequently climbing ramps, stairs, ladders, ropes,

4

and/or scaffolds.   (R. at 73-74.)   Dr. Gallagher further found that Plaintiff was not limited in his ability to balance, stoop, kneel, crouch, crawl, or push and/or pull (other than the limitations on lifting and carrying).   (*Id*.)   Dr. Gallagher opined that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.   (*Id.* at 75.)

Upon reconsideration, Dr. Paul Morton, M.D. reviewed the record and largely adopted Dr. Gallagher's opinion, except that he opined that Plaintiff could occasionally kneel and frequently crouch.   (R. at 86-88.)

## III.   THE ADMINISTRATIVE DECISION

On March 23, 2017, the ALJ issued her decision.   (R. at 15-23.)   The AJL first found that Plaintiff meets the insured status requirements through December 31, 2019.   (*Id.* at 17.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged

---

1.   Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.   *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?

2.   Does the claimant suffer from one or more severe impairments?

3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.   Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.   Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); see also *Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);

in substantial gainful activity since August 18, 2014, the alleged onset date. (*Id.*) At step two, the ALJ found that Plaintiff had the severe impairments of degenerative joint disease of the left knee and osteoporosis. (*Id.*) She further found that Plaintiff had the non-severe impairments of psoriasis/dermatitis, chronic sinusitis, hypertension, hyperlipidemia, osteopenia, hypertrophy benign prostrate, asthma, obesity, and dyspnea. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) that: requires no more than frequents posturals except no climbing ladders, ropes, or scaffolds; requires no greater than occasional exposure to concentrated levels of vibration or hazards, such as unprotected heights or dangerous unshielded machinery; and requires no greater than occasional exposure to concentrated levels of extreme heat.

(*Id.*)

In calculating Plaintiff's RFC, the ALJ considered the opinions of state-agency consultants Drs. Gallagher and Morton, consultative examiner Dr. Darr, and treating physicians Drs. Andreini and Bangera. The ALJ explained that he assigned "great weight" to the opinions of the state-agency consultants, albeit with "less weight" assigned to their opinions regarding postural and environmental limitations. (R. at 20.) The ALJ also assigned "great weight" to the opinion and consultative findings of Dr. Darr. (*Id.*) He assigned Dr. Andreini's opinions "little weight." (*Id.*) Finally, the ALJ assigned "little weight" to Dr. Bangera's April 2015 opinion and "some weight" to his May 2014 opinion that Plaintiff could perform medium work.

*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

(R. at 21.)   The ALJ also considered Plaintiff's credibility in calculating his RFC and found that his allegations regarding his symptoms and limitations were not fully consistent with the evidence in the record.   (R. at 19, 20.)

Relying on the VE's testimony, the ALJ found that even though Plaintiff is unable to perform his past work, he can perform jobs that exist in significant numbers in the national economy.   (R. at 21-22.)   She therefore concluded that Plaintiff was not disabled under the Social Security Act.   (R. at 23.)

## IV.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"   *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").   Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.   The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.   *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).   Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff raises two issues in his Statement of Errors (ECF No. 8). First, he asserts that the ALJ failed to properly evaluate the opinion of his treating physician, Dr. Bangera. Second, he asserts that the ALJ improperly evaluated his credibility under SSR 16-3p. The undersigned considers each of these contentions of error in turn.

### A. The ALJ's Evaluation of Dr. Bangera's Opinions

Plaintiff first argues that the ALJ erred in evaluating the opinion of his treating physician, Dr. Bangera. The undersigned disagrees.

The ALJ must consider all medical opinions that she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis." 20 C.F.R. § 416.927(a)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ."  20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408.   If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004).   Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*.  Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion."  20 C.F.R. § 416.927(c)(2).   Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec*., 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted).   The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

As discussed above, the ALJ assigned "little weight" to the April 2015 opinion of Dr. Bangera and "some weight" to his May 2014 opinion. Plaintiff's contention of error focuses on the ALJ's assessment of Dr. Bangera's April 2015 opinion. Although Plaintiff maintains that the ALJ failed to give good reasons for assigning "little weight" to Dr. Bangera's April 2015 opinion, the ALJ provided the following lengthy discussion of how she arrived at her

determination:

> The medical source statement of Divakar S[.] Bangera, M.D., a treating source, is given little weight (Exhibit 8F). Dr. Bangera did not point to any objective findings to support such significant limitations, and these are not supported by the objective findings in the record. Dr. Bangera notes some of the claimant's symptoms and diagnoses but does not provide citations to his examinations that would support the severe limitations he is opining. His exams of the claimant do not address the knee issues with any specificity, and he has not treated the claimant for this impairment. Instead, the claimant's knee condition is treated by Dr. Andreini. Also, he does not explain the reaching limitations or why the claimant can only lift/carry less than 5 pounds when less than a year earlier he returned the claimant to medium work, as noted below. Further, in a November 2015 treatment note, approximately 7 months after this opinion, Dr. Bangera again notes "Activity Restriction: include no kneeling, no squatting," but does not limit the claimant's reaching.[2] These inconsistencies and his lack of citing to any objective findings to support such significant limitations make his opinion unpersuasive.

> The other opinions of Dr. Bangera are given some weight. On a form for Liberty Mutual Insurance, Dr. Bangera limits the claimant to full-time work at the medium level. While this is consistent with the above finding, it is not a function by function analysis but is instructive on what the examining physician felt the claimant could perform (Exhibit 1F). Further, his opinion that claimant "may" have to change his job in the coalmine is not a function by function analysis of the claimant['s] functional capacity but a subjective comment on a speculative thought. Nonetheless, the undersigned has not found the claimant capable of returning to his past work.

(R. at 21 (footnote added).)

The undersigned finds no error with the ALJ's consideration and weighing of Dr.

Bangera's April 2015 opinion. The ALJ articulated the weight she afforded Dr. Bangera's

---

2 The undersigned notes that the ALJ mistakenly attributes Dr. Andreini's November 2015 notes regarding no kneeling or squatting to Dr. Bangera. (R. at 21; R. at 459.) Despite this erroneous factual finding, the undersigned concludes that the ALJ properly considered Dr. Bangera's opinion and provided good reasons, supported by substantial evidence, for discounting it. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (affirming ALJ's decision where he erred in a factual finding and explaining that "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess. . .").

opinion and properly declined to afford it controlling weight on the grounds that it was not supported by the objective findings in the record and is inconsistent with the record, including Dr. Bangera's May 2014 opinion. *See* 20 C.F.R. § 404.1527(c)(2) (identifying "supportability" and "consistency" with the record as a whole as relevant considerations when evaluating a treating physician's opinion); *Blakely*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)) ("'[I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if . . . it is inconsistent with the other substantial evidence in the case record.'").

First, the ALJ reasonably discredited Dr. Bangera's extreme opinion because it is not supported by the objective findings in the record. Lack of support from the objective evidence constitutes a good reason for discrediting a treating source's opinion. *See Wilson*, 378 F.3d at 544 (identifying supportability of the opinion as a relevant factor in weighing a treating physician's opinion). Here, substantial evidence supports the ALJ's finding. With respect to Plaintiff's osteoporosis, the ALJ accurately noted that Plaintiff's last rib fracture occurred in 2015. (R. at 19; R. at 464, 471.) The ALJ also noted that Plaintiff is prescribed medication for his osteoporosis and that a subsequent bone scan revealed a mild, but statistically significant increase in bone density at his lumbar spine and hips. (R. at 19; R. at 464, 471-72.) Further, during Plaintiff's most recent examination with Dr. Bangera, he reported that his pain score for his ribs was a "3" on a 0-10 numeric scale. (R. at 495.) Regarding Plaintiff's knee impairment, the ALJ considered the following:

> As to the claimant's knee impairment, the record shows conservative treatment. The claimant sought treatment with orthopedist, Derek Andreini, M.D. in September 2014 (Exhibits 7F and 13F). Prior imaging in July 2014 showed minimal narrowing of the medial compartment and elongated lower pole of the

patella, and an examination showed no swelling, no instability, no atrophy, normal range of motion, 5/5 hamstrings and quadriceps strength, and normal tone but some but mild to moderate tenderness of the left knee (Exhibits 5F/34 and 7F/1). The claimant was diagnosed with degenerative joint disease of the left knee and prescribed medication (Exhibits 7F/2 and 13F). At his next appointment in October 2014, the claimant reported that his knee was "doing well" but he wanted to try injections to help with discomfort with increased activities (Exhibits 7F/3 and 13F). After the first injection, the claimant reported 75 percent relief with improvement in walking (Exhibits 7F/5-6 and 13F). The record shows no further treatment but at appointments with a different physician in September 2015 and December 2016, the claimant denied an abnormal gait or any weakness and examinations of his lower extremities were normal (Exhibits 14F/3-4 and 16F).

(R. at 19-20.) Although Dr. Andreini's treatment notes also included some abnormal findings with respect to Plaintiff's knee—such as warmth, tenderness, cystic mass, positive patellar compression test, and positive patellar compression test—the ALJ properly considered that Plaintiff reported 75% relief from conservative treatment. (R. at 403, 405, 456-58); *see Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was receiving conservative treatment). The ALJ also properly considered the findings of consultative examiner Dr. Darr (R. at 20), which revealed a normal examination, and "normal range of motion, 5/5 upper and lower extremity strength, no atrophy, normal sensory, ability to squat without difficulty, and normal gait with no use of an assistive device." (R. at 20 (citing Exhibit 6F/3-9); R. at 389-96.) Thus, the ALJ reasonably discounted Dr. Bangera's opinion in light of the largely normal objective findings in the record and Dr. Bangera's failure to cite to specific evidence to support his extreme opinions.

The ALJ also reasonably discounted Dr. Bangera's opinion regarding Plaintiff's knee impairment given that Plaintiff was receiving treatment for this impairment from a specialist (Dr. Andreini) rather than from Dr. Bangera. (R. at 21); *see Wilson*, 378 F.3d at 544 (explaining that

"the nature and extent of the treatment relationship, supportability of the opinion, . . . and the specialization of the treating source" are relevant factors in weighing a treating source's opinion).

The ALJ also properly discounted Dr. Bangera's opinions due to internal inconsistencies. *See Ledford v. Astrue*, 311 F. App'x 746, 754 (6th Cir. 2008) (identifying internal inconsistencies as a proper basis for discrediting medical opinions). For example, as the ALJ points out, Dr. Bangera "does not explain the reaching limitations or why the claimant can only lift/carry less than 5 pounds when less than a year earlier he returned the claimant to medium work . . ." (R. at 21.) The undersigned agrees that Dr. Bangera failed to identify any record evidence that would warrant such a drastic change in his opinion between May 2014 and April 2015. (*Compare* R. at 283 *with* R. at 409-14.) Moreover, review of the record fails to demonstrate a decline in Plaintiff's condition that would support such a change in Dr. Bangera's opinion. (R. at 253-544.)

Finally, Plaintiff's contention that the ALJ's conclusions are contradictory because she gave "some weight" to Dr. Bangera's May 2014 opinion and "little weight" to his April 2015 opinion lacks merit. (Pl.'s Statement of Errors at 7, ECF No. 8 (positing that "it is unclear how a treating source can be relied upon in 2014, but the same treating physician's opinion is unreliable a year later.").) As the ALJ explained in her decision, Dr. Bangera's May 2014 opinion that Plaintiff can perform medium work is consistent with the record as a whole, whereas his April 2015 opinion is not. (R. at 21.) Thus, the undersigned finds no reversible errors or inconsistencies in the ALJ's weighing of Dr. Bangera's opinions.

Based on the foregoing, the undersigned concludes that the ALJ provided good reasons,

supported by substantial evidence, for discrediting the opinions of Dr. Bangera, and did not violate the treating physician rule or otherwise err in her assessment of his opinions. It is therefore **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.** **The ALJ's Credibility Determination**

Plaintiff next posits that the ALJ erred in evaluating his credibility. The undersigned disagrees.

For decisions rendered on or after March 28, 2016, the ALJ will evaluate a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability under SSR 16-3p. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996), which required the ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires the ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. *See id.* at *11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). Although SSR 16-3p supersedes SSR 96-7p, "according to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them." *Brothers v. Berryhill*, No. 5:16-cv-01942, 2017 WL 2912535, at *10 (N.D. Ohio June 22, 2017). The rules were clarified primarily to account for the difference between a credibility determination, which necessarily impacts the entirety of a claimant's subjective testimony, and a consistency determination, which applies only to specific statements

15

regarding symptoms. *See* SSR 16-3p at *2. It follows, therefore, that the procedures for reviewing an ALJ's credibility assessment under SSR 16-3p are substantially the same as the procedures under SSR 96-7p. Accordingly, the undersigned concludes that existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

The ALJ's credibility determination "with respect to [a claimant's] subjective complaints of pain" is generally given deference. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248;

*see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").   In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication.   20 C.F.R. § 404.1529(c)(3); SSR 16–3p; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011), *adopted*, 2011 WL 3843703 (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision).

Here, the undersigned concludes that the ALJ's analysis supplies substantial evidence supporting her credibility finding and that she properly considered the requisite factors in evaluating Plaintiff's subjective statements.   The ALJ thoroughly discussed the record evidence and concluded that the objective medical findings did not support Plaintiff's subjective complaints, explaining as follows:

> Based on the medical evidence of record discussed above, the undersigned finds that the claimant's allegations as to the intensity and limiting effects of his physical impairments are not fully consistent with the medical evidence of record and do not preclude the limited range of work activity prescribed in the residual functional capacity.   The claimant has had proper treatment for his ribs and osteoporosis and while he is limited in lifting heavy items, these impairments do not preclude him from the limited range of medium exertional work activity prescribed in the residual functional capacity.   While he has a knee impairment, imaging showed minimal findings, he has not needed surgery, and he reported significant improvement with treatment.   Further, the consultative examination showed normal gait, no atrophy, 5/5 upper and lower extremity strength, and ability to squat.   Accordingly, the undersigned finds that the totality of the evidence supports his ability to perform the limited range of medium work prescribed in the residual functional capacity, which accommodates his impairments.   Also, in giving the claimant some benefit of the doubt, the undersigned has limited him to limited exposure in working in extreme heat [ ] based on his testimony.

(R. at 20.)   The undersigned finds that the ALJ reasonably discounted Plaintiff's allegations on the grounds that the objective evidence did not support Plaintiff's subjective complaints.   *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms).   The ALJ also properly considered the conservative nature and effectiveness of Plaintiff's treatment in assessing his credibility.   *See* 20 C.F.R. § 404.1529(c)(3)(v).   *See* SSR 96–7p, 1996 WL 374186 (July 2, 1996) (in assessing credibility, the adjudicator must consider, among other factors, "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" and "[t]reatment, other than medication, the individual receives or has received"); 20 C.F.R. § 404.1529(c)(3) (same).

According to Plaintiff, the ALJ cherry-picked the medical evidence to support her decision, and her characterization of the evidence fails to account for the severity of his knee impairment and osteoporosis.   (Pl.'s Statement of Errors at 10-11, ECF No. 8.)   It is well established, however, that an ALJ is not required to "discuss every piece of evidence in the record to substantiate [his] decision."   *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)). Moreover, an allegation of "cherry picking" "is seldom successful because crediting it would require a court to re-weigh record evidence."   *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").   Here, the ALJ considered the record as a whole and did not cherry pick evidence to support her findings.   With respect to

Plaintiff's osteoporosis, the ALJ appropriately noted that although Plaintiff has suffered several rib fractures, his last fracture occurred in 2015. (R. at 19; R. at 460.) She also noted that Plaintiff is on medication for osteoporosis and that a subsequent bone scan showed a mild but statistically significant increase in bone density. (R. at 19; R. at 464.) Further, contrary to Plaintiff's contention, the ALJ did not merely consider the consultative examiner's findings regarding Plaintiff's knee impairments. Rather, the ALJ also considered the imaging of Plaintiff's knee, which revealed minimal changes; Dr. Andreini's treatment records; Dr. Bangera's treatment records; and the conservative nature and effectiveness of Plaintiff's treatment. (R. at 19-20.) As explained above, although Dr. Andreini's treatment notes include some abnormal findings, they also demonstrate that Plaintiff received significant relief with conservative treatment. (R. at 403, 405, 456-58.) Thus, the undersigned is not persuaded that the ALJ cherry-picked the evidence or otherwise erred in assessing Plaintiff's credibility.

The ALJ also reasonably considered Plaintiff's activities of daily living in assessing his credibility. *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain."). The ALJ noted that Plaintiff "testified that he drives, helps with dishes, may run the sweeper, occasionally grocery shop[s] with his wife, occasionally goes to the mall with his wife, does some ironing, and has no difficulty with bathing or dressing." (R. at 19.) The ALJ also referenced Exhibit 3E, a questionnaire in which Plaintiff reported that he could not complete any activities because he had broken ribs. (*Id.*) The ALJ noted elsewhere in her decision that Plaintiff's last episode of

broken ribs occurred in 2015.  (*Id.*)  She concluded that "[e]ven if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the objective evidence and other factors discussed in this decision."  (*Id.*)  The undersigned concludes that the ALJ properly considered Plaintiff's activities of daily living and the objective evidence in assessing his credibility.

In summary, the undersigned finds that the ALJ properly evaluated Plaintiff's allegations regarding his symptoms and limitations and that substantial evidence supports the ALJ's credibility assessment.  The ALJ's findings were within the ALJ's permissible "zone of choice," and the Court will not re-weigh the evidence.  *See Blakley*, 581 F.3d at 406. Accordingly, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## VI.    DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo*

determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.   Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.   28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


 /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE